OvERTON, J.
 

 delivered the following opinion of the Court: —
 

 The question in this Court is whether the opinion given by the Circuit Court was correct ?
 

 In support of the pre-emption claim the following positions have been taken: —
 

 
 *367
 
 1. Although the appellants’ entry appears to he the oldest, yet, when tested by the existing laws, it could not in fact be so; having, then, the oldest entry in fact, we ought to prevail on this ground.
 

 2. But admitting the entry as made in the books not to be the oldest, yet both our improvements arid certificate of pre-emption must of necessity have been older than Polke’s entry, and, therefore, the right of the appellee is the best.
 

 These points have been met by a reference to the Acts of 1782, §§ 7 and 12 ; 1783, ch. 52, § 4; 1783, ch. 3; 1784, ch. 15, § 1.
 

 For the purpose of obtaining a clear view of the subject before the Court, it will be necessary to consider the laws respecting pre-emption rights, and, secondly, those in relation to military claims.
 

 The Act of 1782, ch. 3, §§ 7 and 12, was the first which passed on this subject. The seventh section states
 
 “
 
 that in May, 1780, an Act passed at Newbern reserving a certain tract of country to be appropriated to the aforesaid purposes (meaning military bounties) and it being represented to this present General Assembly that sundry' families had, before the passing of said Act, settled on the said tract of country: Be it enacted that 640 acres of land shall be granted to each family, or head of a family, and to every single man of the age of twenty-one years and upwards, to include their improvements, who settled on the said land before the first day of June, 1780, for which they shall have the right of pre-emption.”
 

 The 8th section appoints commissioners to adjust these pre-emption claims. The twelfth section is in these words,
 
 “
 
 that the commissioners shall be empowered from time to time; during the execution of this business, to administer an oath or oaths in. cases where doubts may arise respecting any settler claiming a right to a pre-emption under this Act, and to grant certificates to such persons as shall appear to them to have a right to the same ; and the said commissioners are directed to note down in a book, to be kept by them for that purpose, the names of such persons to whom .certificates of pre-emption may be granted, a copy of which certificates they shall return to the General Assembly ; also, an accurate draft of the country they may explore, and the tracts of land they may lay off.” All the remainder of the tract of country, except pre-emption rights and salt licks, are subject to partition as bounties to the officers and soldiers of the revolutionary army. This tract of country is particularly described in the Act of April, 1783, ch. 52, § 4. The Act of 1779, ch. 6, § 3, describes what shall be considered an improvement; and the Act of April, 1783, directs that these claimants of pre-emptions shall pay for them at the rate of ten pounds per hundred acres, in specie certificates, allowing eighteen months to make payment; that the County Court of Davidson shall appoint an entry taker, in whose office these pre-emption claims shall be entered. The 58th chapter of the same session, section 3, declares that the first enterer of
 
 *368
 
 a pre-emption shall have preference of right, and that in case of a second enterer’s claim of a pre-emption being taken by an entry of an earlier date such younger enterer may remove his claim from his improvement to any other vacant land.
 

 It has occurred to the Court that no right of which a Court could take cognizance was communicated to imprbvers by the first Act, supposing no subsequent Act to have passed. It was a naked promise by the Legislature that they would in future make grants for 640 acres to include the improvements of the settlers. No price for these lands was then pointed out or received. The Legislature had, at any subsequent time, the power to revoke this promise, in the same manner the promise was actually revoked which was made to the officers and soldiers to appropriate for their exclusive use this tract of country, by the Act of 1780. The Act of 1782, allowing pre-emption rights, was manifestly a partiál revocation of the Act of 1780, so far as it related to these pre-emption settlers. By the two Acts of April, 1784, ch. 52 and 58, the Legislature prescribed the terms upon which these pre-emptioners shall obtain titles, to wit: that they should pay a consideration and make an entry as other individuals. By authorizing removals it was in fact provided that they might include their improvements or not, as they might think proper; as it never was, nor nev^r can be, an inquiry with a court whether the remover had lost his entry by a prior entry or claim, or not.
 

 The 12th section of the Act of 1782, ch. 3, directing the commissioners to give certificates and make report of the claims allowed, communicates no such right as a court of law can notice. The Acts of 1786, ch. 20, and 1787, ch. 23, have been understood to be the only acts authorizing a court of law to go beyond the grant in the examination of land claims.
 

 When it is considered that the main ground and foundation of a preemption claim is the payment of the consideration to the State, and that the settlers contemplated by the Act of 1782 were allowed to obtain certificates and make entries without including their improvements, it is certainly going far enough for a court of law to take into consideration the pre-emption entry, without going further back to inquire into the commissioner’s certificate if it were before the Court; or to inquire whether the pre-emption grant included such an improvement as was contemplated by the law of April, 1779, ch. 6, § 3. Though it is a presumption of law that there was a commissioner’s certificate to authorize the entry, that certificate might not have called for any particular spot of land or any improvement; or it might be so vague that no person could ascertain where it lay; or it might call for another place. As between a military and pre-emption claim it is believed that the location contained in a commissioner’s certificate, if special, and the same land is afterwards specially entered, will hold from the date of the certificate; but a court of equity is
 
 *369
 
 the proper forum to make these inquiries. Courts of law have gone far enough, to say the least of it, when they look to the entry. This nor any other court, can presume the laud covered by the grant, is the same called for by the commissioner’s certificate, as the claim might have been removed, or the claimant might have made his entry at a different place than that called for in the certificate. In either case the inception of right would be the entry.
 

 The second proposition remains to be considered. It is insisted that the entry of Polke appears to be dated at a time when it was impossible one could have been made; there being no entry book in existence at the time of its date. The Act of April, 1784, ch. 15, shows that there was no entry office or book for military lands, until that time. The plaintiff’s entry is dated on the 7th day of February, 1784. There might have been a location for this land, but it is urged there could not have been an entry, as there was no book to enter the location in, and it is the' first entry that gives the best right. The Act directing an entry book to be kept for the military lands, passed the 12th day of April, 1784; it was the fall of the” same year, before these books were opened at Nashville; consequently the entry of the appellee was made before the books were opened.
 

 The Court has looked into the Acts on this subject. The Act of April, 1783, ch. 3, § 2, provides, “that the officers and soldiers may, on application, obtain from the Secretary of State, warrants of survey for the respective quantities of land to which they are entitled,” and appoints Martin Armstrong as surveyor of these lands. He is directed by himself, or deputy, to execute these warrants by surveying,. “ and returning the same into the secretary’s office within the same time, and in the same manner as is required in other cases.” The third section shows that these warrants were to be located; but there are no directions in what manner it shall be done. The Act did not require a book to be kept, as was required by the Acts of 1777 and 1783, ch. 2 ; nor can it be presumed that the Legislature designed such a book, since by the Act of April, 1784, amendatory of the former, such a book is expressly required. In the first section of this Act are these words: “ The surveyor shall keep a proper book, wherein .he shall enter all locations of land which shall have been made agreeably to law, and therein shall insert the name of the person, the number of the location, number of the warrant, quantity of acres, when located, and description of the location in the following manner,” &c. Previous to this Act of 1784, it had been usual for such locations to be made on the back of the warrants. Were such locations made agreeably to law ? It is certain they were not made agreeably to the Acts of 1777 and 1783, as entries, in proper books, were required by those Acts. The Court is of opinion, however, that these locations were made conformably to the second section of the Act of 1715, ch. 33, which was in force in every case except
 
 *370
 
 otherwise provided for by subsequent Acts. The location of Polke’s military claim for eighteen hundred and eighty-eight acres, haying been made agreeably to law at the time it was done, the Act of 1784 declares its date and number shall be preserved when entered in the book on being opened.
 

 The Act never designed to impair a vested right which was created by the location on the back of the warrant; the land called for in the location, according to the existing laws at the time it was made, would have passed into a grant, without any entry, or placing such location on any book.
 

 The Act of 1784 in requiring it to be entered on a book, was not for the purpose of creating a right to the land, for that had been done before, but to give the citizens a better opportunity of being informed that there was such an appropriation, so that they might avoid it in making subsequent entries.
 

 Hence it results that the entry must have effect from the date it bears, which is previous to the entry under which the appellee claims. The judgment of the Circuit Court must, therefore, be reversed.